Copies Mailed
Chambers of Edgardo Ramos

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #_____
DATE FILED: September 3, 2020

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

– against –

TREMAINE GARRISON,

Defendant.

---

**OPINION AND ORDER**

12 Cr. 214 (ER)

RAMOS, D.J.:

Tremaine Garrison is currently servicing a sentence of 180 months' imprisonment at FCI Danbury, a low security prison in Connecticut, and is scheduled to finish his sentence on February 28, 2026.  Before the Court is his motion, proceeding *pro se*, for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), based on the COVID-19 pandemic.[1]  Doc. 520.  The Government opposes the motion.  Doc. 522.  For the reasons set forth below, Garrison's motion is DENIED.

## I. BACKGROUND

### a. Prior Proceedings

On June 20, 2012, a grand jury in this district returned a Superseding Indictment S1 S12 Cr. 214 (ER), charging Garrison and nineteen co-defendants with conspiring to distribute more than 280 grams of crack cocaine, and more than 50 kilograms of marijuana, in violation of 21 U.S.C. § 846.  Doc. 18.  The Indictment further charged Garrison and ten of his co-defendants

---

[1] Garrison also requests that counsel be appointed to represent him on this motion.  For the Court to order the appointment of counsel, the applicant must, as a threshold matter, demonstrate that his claim has substance or a likelihood of success on the merits.  *See Hodge v. Police Officers*, 802 F.2d 58, 61–62 (2d Cir. 1986).  Here, because Garrison has failed to show that his application for compassionate release is likely to have merit, his request for appointment of counsel is DENIED.

with the use and discharge of firearms during and in relation to that conspiracy, in violation of 18 U.S.C. §§ 924(c) and 2.  *See id.*  On February 4, 2014, Garrison pled guilty pursuant to a plea agreement to a lesser included offense of Count One, as well as Count Two of the Indictment.[2]

According to Garrison's pre-sentence report ("PSR"), he was one of the designated shooters of a violent Yonkers street gang named the "Strip Boyz," and was tasked with protecting the gang's drug territory from rival gangs.  (PSR ¶¶ 30, 35, 37).  In connection therewith, Garrison maintained numerous firearms and engaged in multiple shootings of rival gang members.  *See* Doc. 359 (the "Government's sentencing submission"), at 2–3; *see also* (PSR ¶¶ 62–65).  Garrison also sold drugs on behalf of the gang.  PSR ¶ 38.  Prior to his arrest in this case, Garrison had four state convictions for weapons possession.  (PSR ¶¶ 56–59, 62-65).

Garrison was sentenced by this Court on December 30, 2014.  *See* Doc. 393 ("Sentencing Tr.").  During sentencing, the Court noted the seriousness and violent nature of Garrison's conduct.  *See id.* at 23. ("As importantly, these [gang] battles were taking place in your community, in the streets where you lived, in the streets where your family lived, in the streets where your son lives.  And all of us are too aware that it is not infrequent or is not unknown in these parts for stray bullets to fly through windows and hit very innocent children, and that is the type of activity that you were involved in").  The Court further noted that he was "very lucky" to not be facing a murder charge given that he could have easily killed someone.  *See id.*  The Court ultimately sentenced Garrison to the mandatory minimum of 180 months' imprisonment.  *Id.*

---

[2] The Government is currently not seeking enforcement of a provision in Garrison's plea agreement where he waived his right to seek a modification of his sentence pursuant to 18 U.S.C. § 3582(c).

### b. The Instant Application

On March 11, 2020, the World Health Organization declared COVID-19 a global pandemic. On March 26, 2020, Attorney General William Barr issued a memorandum in which he directed the Bureau of Prisons (the "BOP) to prioritize the use of home confinement as a tool for combatting the dangers that COVID-19 poses to vulnerable inmates, while ensuring its obligation to protect the public. *See* Doc. 502, at 37–38. In a subsequent memorandum dated April 3, 2020, the Attorney General reiterated his earlier guidance and further directed the BOP to give priority to the "most vulnerable inmates" at the "most affected facilities." *Id*. at 39–41.

On May 18, 2020, Garrison filed a request with the Warden of FCI Danbury for compassionate release. *See* Doc. 520, at 12. On June 30, 2020, the BOP acknowledged receipt of Garrison's request.[3] *See id* at 11. On August 11, 2020, Garrison filed the instant motion.

Garrison, who is turning 30 on September 10, claims that the threat of COVID-19, combined with his sleep apnea and hypertension, constitute extraordinary and compelling reasons for his compassionate release.[4] *See id*. at 9. Garrison also claims, without any supporting declarations or documents, that "the institution's own doctor" stated that "if you contract COVID-19, your chance of beating it is less than 20%." *Id*. Finally, Garrison contends that compassionate release is warranted here because he has served over 50 percent of his 180 months' sentence with "no tickets for violence at all" and has been working in "food service for the last three years." *Id*. at 3. According to Garrison, he has also taken part in several rehabilitation programs while incarcerated. *Id*.

---

[3] Since more than thirty days have elapsed since Garrison filed his request for release with the Warden of FCI Danbury, he has exhausted his administrative remedies and his motion is ripe for consideration.

[4] As of the date of this Order, at FCI Danbury, there is no active case of COVID-19, one inmate death has been attributed thereto, and 149 inmates and staff members have recovered from the virus. *See* https://www.bop.gov/coronavirus/ (last accessed on September 3, 2020).

3

On August 18, 2020, the Court received the Government's opposition, Doc. 522, as well as Garrison's BOP medical records for the past year.  The Government contends that Garrison has not shown "extraordinary and compelling" circumstances for his release.  The Government further contends that even if Garrison could show an extraordinary circumstance, the § 3553 factors, and more specifically the seriousness of Garrison's offense, his robust criminal record and the fact that they failed to deter him, counsel against his release.  Finally, the Government also points to an incident that took place in January 2013, after Garrison's arrest in the instant case, when security cameras at the Westchester County Jail captured him and one of his codefendants assaulting a rival gang member as the correction officers looked away.  *See also* Doc. 359 ("the Government's Sentencing Submission"), at 3.

## II. LEGAL STANDARD

### a. 18 U.S.C. § 3582

Although a court may not normally "modify a term of imprisonment once it has been imposed," there are certain limited exceptions, including "compassionate release."  *See United States v. Roberts*, No. 18 Crim. 528 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020) (internal quotation marks and citation omitted).  A court may reduce a prisoner's sentence when it finds that there are "extraordinary and compelling reasons" that warrant such a reduction, but one of two conditions must first occur:  either the BOP Director may move the court to release the prisoner; or, alternatively, the prisoner himself may move the court, but only after he has "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

Once a petition for compassionate release is properly brought before a court, its discretion is guided by the policy statement in U.S. Sentencing Guidelines § 1B1.13. *See id*. The Guidelines place three conditions on a determination of early release:

(1) There are extraordinary and compelling reasons that warrant the reduction; and

(2) a situation where "the defendant is not a danger to the safety of any other person or to the community."

(3) the reduction is consistent with this policy statement.

U.S. Sentencing Guidelines § 1B1.13. The Guidelines include as an "extraordinary and compelling reason" the existence of "a serious physical or medical condition…that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id*. cmt. 1(A)(ii)(I). The Guidelines further include as an "extraordinary and compelling reason" if the defendant is at least 65 years old, has served at least 10 years or 75 percent of his sentence, and "is experiencing a serious deterioration in physical or mental health because of the aging process." *Id*. cmt. 1(B).

When determining whether a prisoner is a danger to the community, section 1B1.13 refers to 18 U.S.C. § 3142(g), which in turn lists the following factors to be considered:

(1) The nature and circumstances of the offense charged…;

(2) The weight of the evidence against the person;

(3) The history and characteristics of the person…; and

(4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

If the sentencing court finds that "extraordinary and compelling reasons" exist, it "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of

5

imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

**III.     DISCUSSION**

    **A.  Extraordinary And Compelling Reasons**

As the moving party, Garrison has the burden to show that he is entitled to a compassionate release.  *See United States v.* Ebbers, 432 F. Supp. 3d 421, 426–27 (S.D.N.Y. 2020) (citing *United States v.* Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.")).  Although Garrison asserts that he suffers from sleep apnea and hypertension, his medical records do not reflect either medical condition.  In fact, Garrison denied any history of hypertension prior to a dental procedure he underwent on June 24, 2020.  Given that Garrison has not presented proof of any underlying medical condition that would put him at a greater risk of severe complications if infected with COVID-19, the Court finds that Garrison has not shown "extraordinary and compelling" reasons warranting a reduction of his sentence.  While the Court does not doubt the severity of COVID-19, especially in a confined environment, the pandemic alone, absent some indication of factors affecting Garrison's risk, does not warrant compassionate release.  *See United States v. David*, No. 12 Cr. 214 (ER) (S.D.N.Y. Aug. 6, 2020) (Doc. 519, at 8) ("just because there is a pandemic does not mean that the jailhouse doors ought to be thrown open.").

    **B.  Section 3553(a) Factors**

In addition, even if Garrison were able to show extraordinary and compelling reasons for his release, the § 3553 (a) factors nevertheless counsel against his release.

Garrison was sentenced for serious and dangerous crimes.  As the enforcer of a violent street gang, he personally took part in the gang warfare and drug distribution that threatened the well-being of southwest Yonkers for years.  Furthermore, his prior state convictions for possession of weapons, failed to deter him from continuing his unlawful conduct.  Indeed, he continued to commit additional acts of violence against rival gang members even after his arrest in the instant case while at the Westchester County Jail.  Therefore, Garrison has failed to show that deterrence is no longer needed.

Accordingly, in light of the seriousness of Garrison's offense and his failure to show that deterrence is no longer needed, his motion for compassionate release must be denied.

## IV.    CONCLUSION

For the aforementioned reasons, Garrison's motion for compassionate release is DENIED.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 520.  It is SO ORDERED.

Dated:    September 3, 2020
         New York, New York

_____
Edgardo Ramos, U.S.D.J.